[No. C065265. Third Dist. Sept. 16, 2011.]

UNITED ASSOCIATION LOCAL UNION 246, AFL-CIO, Plaintiff and Appellant, v.
OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, Defendant and Appellant;
DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, et al., Real Parties in Interest and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

## COUNSEL

Worksafe, Inc., Lora Jo Foo, Corey N. Friedman; Kazan, McClain, Lyons, Greenwood & Harley and Frances C. Schreiberg for Plaintiff and Appellant.

J. Jeffrey Mojcher and Kari M. Johnson for Defendant and Appellant.

Lawrence H. Kay for Construction Employers Association as Amicus Curiae on behalf of Defendant and Appellant.

Amy D. Martin and Katherine Wolff for Real Party in Interest and Respondent Department of Industrial Relations, Division of Occupational Safety and Health.

No appearance for Real Party in Interest and Respondent Harris Construction Company, Inc.

## OPINION

BUTZ, J.—Under the California Occupational Safety and Health Act of 1973 (Cal-OSHA) (Lab. Code, § 6300 et seq.)[1] and the California Code of Regulations (Cal. Code of Regs., tit. 8, § 330 et seq.),[2] the Department of Industrial Relations, Division of Occupational Safety and Health (the Division), may issue citations to multiple employers at a single worksite for a Cal-OSHA violation (§ 6400; tit. 8, § 336.10). One type of multiple employer, among others, is the "controlling employer," i.e., the employer responsible, by contract or through actual practice, for safety and health conditions at the worksite. (§ 6400, subd. (b)(3); tit. 8, § 336.10.)

We conclude that the Occupational Safety and Health Appeals Board (the Board) improperly held—in the Board's decision at issue here (*Harris-Board Decision*)[3]—that the Division had to demonstrate, as an element of its prima facie case against a controlling employer cited for a general violation of Cal-OSHA, that "the employer was in a position to abate the . . . violative condition at issue" (*Harris-Board Decision, supra,* 2007 CA OSHA App.Bd. Lexis 50 at p. *15). We reach this conclusion based on our opinion in *Overaa Construction v. California Occupational Safety & Health Appeals Bd.* (2007) 147 Cal.App.4th 235 [54 Cal.Rptr.3d 154] (*Overaa*), which we issued two months before the *Harris-Board Decision* was decided.

We shall affirm the trial court's judgment and attorney fees order, which, respectively, (1) granted a writ of mandate that vacated the *Harris-Board Decision*, remanded the matter to the Board, and specified that, on remand, this "position to abate" requirement was not an element of the Division's prima facie case and (2) denied the writ petitioner's request for attorney fees under the private attorney general theory of Code of Civil Procedure section 1021.5.

## BACKGROUND

### Legal Background

In California, the Division has primary responsibility for administering and enforcing Cal-OSHA. (*Rick's Electric, Inc. v. Occupational Safety & Health Appeals Bd.* (2000) 80 Cal.App.4th 1023, 1026 [95 Cal.Rptr.2d 847] (*Rick's Electric*).) The Board is an independent adjudicatory agency that resolves appeals from Division-issued citations under Cal-OSHA. (*Rick's Electric,* at p. 1027; § 148.)

---

[1] Undesignated statutory references are to the Labor Code.

[2] Undesignated title references are to the California Code of Regulations.

[3] *In re Harris Construction Company, Inc.* (Cal. OSHA, Mar. 30, 2007, No. 03-R2D5-3914) 2007 CA OSHA App.Bd. Lexis 50 (*Harris-Board Decision*).

Prior to the adoption of title 8, section 336.10 in 1997, California had no rules for issuing multiple employer (multi-employer) citations. In 1997, the Director of the Department of Industrial Relations (the Director) promulgated the multi-employer worksite standard—title 8, section 336.10—in response to the federal Occupational Safety and Health Administration's determination that, in the absence of such a standard, the Cal-OSHA program was not as protective as the federal program, as federal law required.

Title 8, section 336.10 provides:

"On multi-employer worksites, both construction and non-construction, citations may be issued only to the following categories of employers when the Division has evidence that an employee was exposed to a hazard in violation of any requirement enforceable by the Division:

"(a) The employer whose employees were exposed to the hazard (the exposing employer);

"(b) The employer who actually created the hazard (the creating employer);

"(c) The employer who was responsible, by contract or through actual practice, for safety and health conditions on the worksite; i.e., the employer who had the authority for ensuring that the hazardous condition is corrected (the controlling employer); or

"(d) The employer who had the responsibility for actually correcting the hazard (the correcting employer).

"Note: The employers listed in [subdivisions] (b) through (d) may be cited regardless of whether their own employees were exposed to the hazard."

In 1999, the Legislature codified title 8, section 336.10 by amending Labor Code section 6400, subdivision (b)(1) through (4), which repeats the regulation virtually word for word.

*Factual Background*

This matter arose out of a citation the Division issued to Harris Construction Company, Inc. (Harris), for a general violation of title 8, section 3329, which requires that pressurized systems be depressurized prior to dismantling or opening.[4]

---

[4] Harris was represented in the underlying action by Attorney Deb C. Pedersdotter and was entitled to appear as a real party in interest, but it did not file a brief or otherwise actively participate in this appeal.

In 2003, Harris was the general contractor on a project to expand Madera Community College. Jeff Gilkison was an apprentice pipefitter for Champion Industrial Contractors (Champion), Harris's subcontractor on the project.

Gilkison seriously injured his leg after being instructed by his supervisor at Champion to fix a leak in a pressurized chill water line that other Champion employees had installed two days before. Gilkison mistakenly opened the pressurized line, causing a large valve to be thrust against his leg.

Evidence presented at the citation hearing before the administrative law judge (ALJ) also showed the following.

Harris's subcontract with Champion contained the following two provisions: (1) "When so ordered, the Subcontractor shall stop any part of the work, which Harris deems unsafe until corrective measures satisfactory to Harris have been taken, and the Subcontractor agrees that it shall not have nor make any claim for damages growing out of such stoppages"; and (2) "Should the Subcontractor neglect to take such corrective measures, Harris may do so at the cost and expense of the Subcontractor and may deduct the cost thereof from any payments due or to become due to the Subcontractor."

Harris maintained an office trailer at the worksite, about 600 feet from where Gilkison was injured. Gilkison spoke with Harris employees almost daily regarding his work. Harris also held weekly safety meetings, which Champion supervisors usually attended, and Harris stipulated that it "played an active role in safety." Gilkison believed that he jokingly mentioned to some of Harris's "foremen" shortly before the accident that he was "cleaning up" after some journeymen.

The Division's citation officer, an industrial hygienist, cited Harris as a controlling employer. (Champion was also cited, but that citation is not at issue.) The citation officer based Harris's citation primarily on the two provisions of Harris's subcontract with Champion quoted above, but the officer also considered Harris's actual practices at the worksite.

*Procedural Background*

The ALJ upheld the citation against Harris as a controlling employer. The ALJ relied on two prior Board decisions: *In re DeSilva Gates Construction* (Cal. OSHA, Dec. 10, 2004, No. 01-R2D2-2742) 2004 CA OSHA App.Bd.

Lexis 62 (*DeSilva-Board Decision*) and *In re C. Overaa & Co.* (Cal. OSHA, Apr. 1, 2004, No. 01-R1D4-3560) 2004 CA OSHA App.Bd. Lexis 15 (*Overaa-Board Decision*).[5]

The *DeSilva-Board Decision* had concluded that "the applicability of [title 8,] section 336.10 is not conditioned upon a controlling employer's knowledge of the [general] violation"; and to "inject into [title 8,] section 336.10[, subdivision] (c) [(i.e., the definition of 'controlling employer')] an interpretation that requires that a [controlling] employer have a 'realistic ability' to detect hazardous conditions as a necessary element of finding the controlling employer liable for [a general] violation would lead to 'unwieldy subjective enforcement.' " (*DeSilva-Board Decision, supra*, 2004 CA OSHA App.Bd. Lexis 62 at p. *7, fns. omitted.)

In the *Overaa-Board Decision*, the Board held that the Division did not bear the burden of proving, as an element of a prima facie case of a Cal-OSHA general violation against a controlling employer, the employer's lack of reasonable diligence regarding the violation. (*Overaa, supra*, 147 Cal.App.4th at p. 246.)

On its own motion, the Board ordered reconsideration of the ALJ's decision here, and issued, in turn, the *Harris-Board Decision*.

The *Harris-Board Decision* held that "an employer's status as a controlling employer subject to citation under [title 8,] section 336.10 is dependent on whether the employer was in a position to abate the specific violative condition at issue. . . . [¶] . . . Accordingly, the Division must present a prima facie case demonstrating that the employer was in a position to abate the specific violative condition at issue." (*Harris-Board Decision, supra*, 2007 CA OSHA App.Bd. Lexis 50 at p. *15.)

Gilkison's union, United Association Local Union 246, AFL-CIO (the Union), with the Division as real party in interest, petitioned the trial court for a writ of mandate to vacate the *Harris-Board Decision*. (§ 6627.) Relying on our decision in *Overaa, supra*, 147 Cal.App.4th 235, the trial court obliged, concluding that "the [Board] committed 'legal error' in [the *Harris-Board Decision*] by holding that the Division had the burden of proving, as part of its prima facie case, that Harris, as the controlling employer, was in a position to abate the condition that led to the citation and the worker injury."

---

[5] We grant the United Association Local Union 246, AFL-CIO's request for judicial notice, which attached copies of four Board decisions. We deny the union's motion to strike a particular argument in the Board's reply brief on the issue of standing.

The trial court, however, denied the Union's request for attorney fees under the private attorney general theory of Code of Civil Procedure section 1021.5. The court concluded that the Union had "not demonstrated that the ruling in this case conferred a significant benefit on the general public or a large class of persons."

The Board then appealed the overturning of the *Harris-Board Decision*. The Union appealed the denial of its attorney fees request.[6]

## DISCUSSION

In the published portion of this opinion, we discuss the Board's appeal from the judgment granting the Union's writ of mandate; in the nonpublished portion, we address the Union's appeal for attorney fees.

### I. The Board's Appeal

#### A. *The Pivotal Issue*

The pivotal issue in the Board's appeal is the proper interpretation of the term "controlling employer" in section 6400, subdivision (b)(3) (hereafter section 6400(b)(3)) (mirroring tit. 8, § 336.10, subd. (c); hereafter title 8,

---

[6] On appeal, the Board has disputed the Union's standing to petition the superior court and appeal here. This dispute is largely academic. This is because, on the issue of overturning the *Harris-Board Decision*, section 148.6 grants standing to the Division (real party in interest) "to seek judicial review" of a board decision, the Division's interests in the present litigation match those of the Union, the Division has appeared and litigated in the trial court and on appeal here, and the Division moved the trial court to realign it as a petitioner instead of a real party in interest (to match the Union's designation as a petitioner; the trial court denied this motion only because, at the time of the motion, the issue of the Union's administrative exhaustion had not yet been resolved). When a party lacks standing to sue, the action must be dismissed, unless the complaint (petition) can be amended by substituting a party who has standing. (*Cloud v. Northrup Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004–1011 [79 Cal.Rptr.2d 544] (*Cloud*).)

Given the facts recounted in this footnote, this principle applies here. The Division's realignment motion acted as the functional equivalent of a motion to amend the petition to substitute real party in interest Division as a petitioner; also, given the identity of interests between the Union and the Division, this functional motion to amend "relates back" to the timely filing of the Union's petition (§ 6627 sets forth a 30-day statute of limitations for applying for a writ of mandate challenging a Board decision). (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408–409 [87 Cal.Rptr.2d 453, 981 P.2d 79] [relation-back doctrine]; see also *Cloud, supra*, 67 Cal.App.4th at p. 1005.)

section 336.10(c)). Section 6400(b)(3) specifies: "(b) On multiemployer worksites, both construction and nonconstruction, citations may be issued only to the following categories of employers when the [D]ivision has evidence that an employee was exposed to a hazard in violation of any requirement enforceable by the [D]ivision: [¶] . . . [¶] (3) The employer who was responsible, by contract or through actual practice, for safety and health conditions on the worksite, *which is* the employer who had the authority for ensuring that the hazardous condition is corrected (the controlling employer)." (§ 6400(b)(3), italics added [as noted, the language of tit. 8, § 336.10(c) is identical to this statute except the statute substitutes "which is" for "i.e." (see italicized words)].)

As we shall explain, the proper interpretation of "controlling employer" in this statute (and corresponding regulation) effectively delineates the proper burden of proof the Division must meet in its prima facie case against a controlling employer cited for a general violation of Cal-OSHA.

## B. *Standard of Review*

*Overaa* sets forth our standard of review: " ' "Our function on appeal is the same as that of the trial court in ruling on the petition for the writ. . . . [Citations.] Where the [Board's] decision involves the interpretation and application of existing regulations [and statutes], we must determine whether the administrative agency applied the proper legal standard. [Citation.] . . . The Board is one of those agencies [(as is the Division)] whose expertise we must respect. [Citation.]" [Citation.] However, "[a]n administrative agency cannot alter or enlarge the legislation, and an erroneous administrative construction does not govern the court's interpretation of the statute." ' " (*Overaa, supra,* 147 Cal.App.4th at pp. 244–245.)

## C. *Analysis*

■ *Overaa* has also done most of the heavy interpretive lifting already. There, in construing the legal framework encompassing section 6400(b)(3) (and tit. 8, § 336.10(c)), we concluded that the Board, in the *Overaa-Board Decision*, properly held that the Division did not have to prove lack of reasonable diligence by a controlling employer as an element of the Division's prima facie case of a general violation under Cal-OSHA. (*Overaa, supra,* 147 Cal.App.4th at pp. 237–239, 246.)

And, on the issue of denial of the attorney fees, assuming for the sake of argument the Union has standing, we shall affirm that denial on its merits in any event.

We reasoned in *Overaa*: "When the Division alleges a 'serious' violation [under Cal-OSHA, as opposed to a general violation] . . . , section 6432 [(the serious violation statute)] . . . authorizes the employer to assert reasonable diligence as an affirmative defense. . . . [Fn. omitted.] [¶] There would be no need for section 6432's statutory authorization (for employers to assert diligence as an affirmative defense) if lack of diligence were an element of the Division's prima facie case. [¶] No parallel provision addresses employer diligence in the context of a *general* (as opposed to serious) violation. Overaa offers no reason as to why the Division should have a heavier burden in proving a general violation than it has in proving a serious violation." (*Overaa, supra*, 147 Cal.App.4th at pp. 246–247.)

■ We conclude the Board's requirement in the *Harris-Board Decision* that the Division demonstrate—as part of its prima facie case against a controlling employer cited for a general violation under Cal-OSHA—that the controlling employer "was in a position to abate the specific violative condition at issue" (*Harris-Board Decision, supra*, 2007 CA OSHA App.Bd. Lexis 50 at p. *15), is similar to the "lack of reasonable diligence" requirement that we found, in *Overaa, supra*, 147 Cal.App.4th at page 246, would have been legally improper to impose as part of the prima facie case.

As the trial court aptly reasoned regarding this similarity, "The similarity [between these two legal requirements] arises from the fact that both [of them] force the Division, in the first instance, to address factual issues regarding the controlling employer's actual ability to detect and correct the violation for which it was cited which are not set forth in . . . section 6400(b)(3). In either case, the Division would need to go beyond the issues of contractual responsibility, actual practice and authority that are set forth in the statute in order to establish a prima facie case. . . . Both requirements go beyond what the applicable statute requires."

Furthermore, the "lack of reasonable diligence" requirement was couched in the context of the controlling employer's knowledge—i.e., "the employer knew, or in exercising reasonable diligence should have known, of the violation." (*Overaa, supra*, 147 Cal.App.4th at pp. 237–238; see *id.* at p. 246.) Arguably, the "position to abate" requirement of the *Harris-Board Decision* places an even greater burden on the Division's prima facie case than the mere constructive knowledge component of the "lack of reasonable diligence" requirement we discredited in *Overaa*.

The Board counters that it properly interpreted the ambiguous, two-part definition of "controlling employer" in section 6400(b)(3) (and the virtually identical tit. 8, § 336.10(c))—through its "position to abate" requirement in the *Harris-Board Decision*—and that it is the administrative agency with the expertise to do so.

Specifically, the Board argues that the *Harris-Board Decision* correctly analyzed the "controlling employer" definition by concluding that the definition requires more evidence, in the Division's prima facie case, of a controlling employer's connection to the violative condition than "mere contract language" giving the controlling employer responsibility "for safety and health conditions on the worksite"; the Board notes the "controlling employer" definition also requires, in its second part, that the employer have "the authority for ensuring that the hazardous condition is corrected." (§ 6400(b)(3); tit. 8, § 336.10(c).) In other words, the Board maintains, its interpretation properly gives effect to the *two* parts of the "controlling employer" definition, rather than just the first part, and avoids making section 6400(b)(3) an improper strict liability standard. As the Board sees it, the *Harris-Board Decision* properly held that, "under the facts presented, which consisted merely of the [sub]contract language and the presence of Harris's trailer 600 feet from the accident site, a general violation of the [Cal-OSHA] safety orders was not shown under the multi-employer worksite . . . rule [of] section 6400(b)(3) and [title 8,] section 336.10[(c)]." We disagree for three reasons.

 First, the definition of "controlling employer" in both section 6400(b)(3) and title 8, section 336.10(c) does not comprise two distinct parts, but two equivalent parts connected explanatively by "which is" and "i.e.," respectively. That is, the "controlling employer" is the employer "who was responsible," in other words "who had the authority"—"by contract or through actual practice"—"for ensuring that the hazardous condition is corrected." (§ 6400(b)(3); tit. 8, § 336.10(c).) This is not a strict liability standard. Moreover, the "controlling employer" can be contrasted with another category of multi-employer, the "correcting employer," which is "[t]he employer who had the responsibility for actually correcting the hazard." (§ 6400, subd. (b)(4); tit. 8, § 336.10, subd. (d).)

Second, the Board's interpretive expertise rests on progressively shaky ground here. As we have seen, the Board's "position to abate" interpretation

in the *Harris-Board Decision* conflicts with its earlier interpretations of title 8, section 336.10(c) in the *DeSilva-Board* and *Overaa-Board Decisions*. The Division, which disagrees with the Board's "position to abate" interpretation, is also an administrative agency " 'whose expertise we must respect' " because it has primary responsibility for administering and enforcing Cal-OSHA. (*Rick's Electric, supra*, 80 Cal.App.4th at p. 1034; see *Overaa, supra*, 147 Cal.App.4th at p. 245.) And, most significantly, the "position to abate" interpretation is similar to the "lack of reasonable diligence" interpretation we discredited in *Overaa*, and it is the judiciary which has the final say in interpreting the law. (*Overaa, supra*, 147 Cal.App.4th at pp. 244–245, 246.)

Third, and lastly, "the facts presented" at the ALJ hearing showed that while the Division's citation officer based Harris's citation primarily on Harris's subcontract with Champion, the officer also considered Harris's actual practices at the worksite. There was evidence at the ALJ hearing that these actual practices included Harris's (1) onsite job trailer near the accident site, (2) almost daily discussions with the injured Champion employee (Gilkison) concerning his work, (3) weekly safety meetings with Champion supervisors, and (4) stipulation that it "played an active role in safety."

### D. *Conclusion*

■ We conclude the Board improperly interpreted section 6400(b)(3) (and tit. 8, § 336.10(c)) in the *Harris-Board Decision* to require that the Division, as an element of its prima facie case against a controlling employer for a general Cal-OSHA violation, demonstrate that the controlling employer was "in a position to abate the specific violative condition at issue."

On remand, Harris will be allowed to assert an affirmative defense of due diligence, should it choose to do so.

### II. The Union's Appeal: Attorney Fees Under Code of Civil Procedure Section 1021.5*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 273.

## DISPOSITION

The judgment and the order denying attorney fees are affirmed. The parties shall pay their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Hull, Acting P. J., and Hoch, J., concurred.