Filed 4/2/26  General Dynamics NASSCO v. Cal. OSHA Board CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| GENERAL DYNAMICS NASSCO, | D085662 |
| Appellant, | |
| v. | (Super. Ct. No. 37-2023-00024521-CU-WM-CTL) |
| CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, | |
| Respondent, | |
| CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Ogletree, Deakins, Nash, Smoak & Stewart and Kevin D. Bland, Nicole A. Naleway, for Appellant.

Aaron Riley Jackson, James Jeffrey Mojcher, Frances Elizabeth Clarke, Karen E. Halbo and Brian Nichols, for Respondent, California Occupational Safety and Health Appeals Board.

Rocio Y. Garcia-Reyes, Assistant Chief Counsel and Kathryn J. Woods, Staff Counsel, for Real Party in Interest and Respondent, Department of Industrial Relations, Division of Occupational Safety and Health.

Appellant General Dynamics NASSCO (NASSCO) appeals a judgment entered after the trial court denied its petition for a writ of administrative mandate challenging citations issued by respondent Division of Occupational Safety and Health (Division, also known as Cal/OSHA[1]) for violations of General Industry Safety Orders contained within the California Code of Regulations, title 8, sections 3203 and 5042 (hereafter Safety Order 3203 and Safety Order 5042). The cited safety orders require employers to implement an injury and illness protection program (Safety Order 3203(a)(4),(a)(6)), and keep employees clear of suspended loads (Safety Order 5042(a)(9)). An administrative law judge and then respondent California Occupational Safety

---

[1] " 'Cal/OSHA' is a common abbreviation for the California Department of Industrial Relations' Division of Occupational Safety and Health." (*Nolte Sheet Metal, Inc. v. Occupational Safety & Health Appeals Bd.* (2020) 44 Cal.App.5th 437, 441, fn. 1.) The Department of Industrial Relations is involved in the regulation of workplace health and safety. (See *Department of Industrial Relations v. Occupational Safety & Health Appeals Bd.* (2018) 26 Cal.App.5th 93, 97.) "The Standards Board promulgates regulations setting occupational health and safety standards. [Citation.] The Division enforces those standards, inspecting workplaces and issuing citations for health and safety violations. [Citation.] Finally, it is the responsibility of the Appeals Board to adjudicate appeals of Division citations." (*Ibid.*)

and Health Appeals Board (the Board) affirmed the citations. On appeal from the ensuing judgment, NASSCO primarily contends the decisions lack support in substantial evidence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In March 2018, a temporary employee working a rigging operation at NASSCO's shipyard sustained injuries when his hand was pinned between an approximately 500-pound brace and an existing horizontal cross-pipe.[3] The brace was in a sling and suspended by a crane. The employee had been installing the brace (the third of four) onto a stanchion, guiding it with his right hand on the brace, when the brace shifted up and caught his hand in a pinch point between the brace and the cross-pipe. The horizontal cross-pipe was not present when the first two braces were put in place, but it was present during installation of the last two. NASSCO's rigging supervisor was not present at the time, and did not see the accident.

At the time of the accident, NASSCO had in place a safety procedure manual specifically addressing rigging. In part, it provided that: "All people are in the clear before moving any loads"; "Always stand clear of the load so if it swings, slips, or spills, injuries do not occur. Do not stand near material that could be struck by a moving load"; "Hands and feet are kept clear of

---

[2]    NASSCO's factual statement in its opening brief lacks administrative record citations. Neither respondent argues this constitutes a waiver or forfeiture of NASSCO's sufficiency of the evidence challenge however, so we will consider the arguments.

[3]    The employee explained that rigging "is a process of lifting different items from Point A to Point B." The rigger's responsibility is to attach the proper rigging materials to the object so that it is moved safely without damaging the object or the rigging, and ensure surrounding people are clear of the load being moved. The crane's function is to lift the load vertically and traverse it to a finish point.

3

pinch points"; and "When it is necessary to guide the load by hand be sure fingers and hands are on the outside of the material so they cannot be pinched."

NASSCO's investigation report indicated that the pinch point "should have been recognized and avoided." More specifically, it indicated the employee was not aware of the pinch point, and that "[s]upervision should have caught the pipe IWO [in way of] brace and addressed it earlier." In a section regarding "corrective actions to prevent recurrence" (some capitalization omitted), NASSCO listed, "Review process for installing braces," and "Determine if pipe above clip can pipe free ride until braces are installed." After the accident, NASSCO put out a "Rigging Safety Gram" discussing pinch points in rigging operations and describing what to look for when installing the type of brace that injured the employee. With respect to work-site hazard awareness, the rigging safety gram stated, "The work-site had changed in comparison to the other braces installed on different stanchions within the same block. [¶] Piping was installed on this stanchion, which created a pinch point hazard to personnel involved during the installation process." As to body position awareness, the rigging safety gram contained a photograph depicting a worker with his hand on the brace, stating, "In this case, the Rigger's hand was placed on the topside of the brace (as shown in the picture with the red circle). [¶] In like manner, the Rigger's

4

hand was also in between a piping system, which eventually led to a severe Pinch Point injury."[4]

Following an inspection, Division issued two citations and assessed $18,600 in penalties. The first was a general citation under Safety Order 3203(a): In citation 1, item 1, Division alleged that NASSCO "did not implement and maintain an effective Injury and Illness Prevention Program as required in the following two instances: [¶] 1. The employer procedures for identifying and evaluating work place hazards is not adequate because supervisors did not identify hazards associated to hoisting operations including, but not limited to, pinch points after worksite had change [*sic*]. [¶] 2. The employer did not implemented [*sic*] effective methods and/or procedures for correcting unsafe or unhealthy conditions, work practices and work procedures in a timely manner, including, but not limited to, hazards associated to hoisting operations." Citation 2 was a serious violation under Safety Order 5042(a)(9), in which Division alleged NASSCO "did not keep all employees clear of loads about to be lifted and of suspended loads" and "[a]s a result . . . an employee working under a suspended load was seriously injured when the load being lifted injured the employees [*sic*] hand."

NASSCO appealed the citations to the Board, which set a hearing before an administrative law judge. The employee testified, as well as NASSCO's safety manager Duke Vuong and Cal/OSHA associate safety engineer Victor Reyes. Reyes testified that when the employee described the accident, he mentioned "differences between the work that he was doing

---

4    The Rigging Safety Gram contained a section on how to avoid becoming a pinch point victim, with bullet points reading: "・ Be[ ] aware of your surrounding  [¶]  ・ Take notice of your body positioning during a rigging operation  [¶]  ・ Understand the dangers involved when moving heavy material and equipment  [¶]  ・ Look for work-site hazards before and during a rigging operation[.]"

5

earlier . . . and when the accident happened." Reyes explained: "Earlier, the work that they were doing was the same in regards to placing those braces in the stanchion. The difference is that the ones that they had done earlier did not have the—except for one, did not have the horizontal pipe coming into play. All the other ones—there was and there wasn't any type of obstruction in between the placement of the brace and—and the stanchion. But for the last two they did, there, was a—that vertical [*sic*] pipe that was coming into play that made the task a bit different." According to Reyes, Vuong did not tell him that the employee had violated any NASSCO safety rule when he was injured. Likewise, NASSCO's rigging supervisor told him NASSCO's rigging safety rules—including not having body parts underneath the load— were being followed. NASSCO's rigging supervisor told Reyes that the accident could have been prevented if they had changed the order in which the brace and horizontal pipe were placed.

Vuong testified about NASSCO's rigging policy of safe work practices, which was part of its injury and illness prevention program. Before conducting rigging, the employee who was injured received training under this policy, as well as through hands-on, live scenarios. Vuong determined in his investigation of the incident that the employee violated NASSCO's safety policy concerning keeping hands clear of pinch points. But Vuong stated the employee did not violate NASSCO's safety policy by touching the load during installation, because he was in process of guiding the brace into its final installed position. Vuong testified that before its installation, the horizontal pipe was discussed, and it was determined it was safer to have it installed before the braces. According to Vuong, the employee could have avoided the accident while maintaining positive control of the load by holding the brace lower, down the length away from the horizontal cross-pipe.

6

In April 2022, the administrative law judge affirmed the citations in a written decision.

The following month, NASSCO sought reconsideration before the Board, arguing the administrative law judge's findings were unsupported by the evidence or case law. It argued it was in compliance with the safety order. NASSCO also argued the decision contravened public policy in that the employee's practice of guiding the steel components to their final position was the safest means of doing the job.[5]

In January 2023, the Board found Division had established the violations by a preponderance of the evidence. In part, it found the employee "was standing beside a suspended pipe brace, using his hands to control and adjust it into the bracket, when the load unexpectedly shifted upwards, trapping and crushing [his] right hand in a pinch point. [¶] . . . The pinch point was between a horizontal pipe, already installed on the stanchion, and the suspended pipe brace. [¶] . . . The horizontal pipe created an obstruction in front of the bracket where the pipe brace needed to be fitted into place, resulting in the pinch point between the brace and the horizontal pipe. [¶] . . . In order to manually guide the pipe brace into place, [the employee] had placed his hand on top of the pipe brace, inadvertently placing it in the pinch point. [¶] . . . This obstruction, and accordingly the pinch point, was not present regarding the previous two pipe braces [the employee] had installed on the same stanchion." The Board further found "[n]o supervisor was present when [the employee's] injury occurred"; NASSCO's "Rigging Safety Procedures contained provisions requiring employees to keep clear of

---

5    NASSCO further argued that it had established an "independent employee act" affirmative defense. The Board found NASSCO did not establish that affirmative defense. NASSCO does not repeat the argument on appeal.

suspended loads and avoid pinch points"; [NASSCO's] "definition of keeping employees clear of suspended loads was limited to keeping employees clear of areas directly underneath overhead loads"; and "[NASSCO's] established procedures permitted employees to be in close proximity of, and in direct bodily contact with, suspended loads." As more fully set out below, the Board explained how the evidence supported the citations.

In June 2023, NASSCO petitioned for a writ of administrative mandamus (Code Civ. Proc., § 1094.5). It alleged the Board (1) engaged in conduct contrary to Labor Code section 6629 by not basing its factual findings on substantial evidence in the record (Lab. Code, § 6629, subds. (a), (c), (d), (e)); (2) failed to justify its findings of fact and failed to apply Board case law precedent; (3) failed to state the evidence relied upon as required under Labor Code sections 6608, 6623, and California Code of Regulations title 8, section 385, subdivision (a); and (4) did not proceed in a manner required by law (Code Civ. Proc., § 1094.5, subd. (b)). It asked the court to issue a writ of mandate setting aside and vacating the decision after reconsideration.

The trial court denied the writ petition, determining the citations and assessed penalties were supported by substantial evidence. NASSCO filed this appeal.

## DISCUSSION

### I. *Legal Standards and Standard of Review*

Our review is governed by Labor Code sections 6629 and 6630: "The review by a court considering a petition for a writ of mandate challenging an Appeals Board decision 'shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether: [¶] (a) The appeals board acted without or in excess of its powers. [¶] (b) The order or decision was procured by fraud. [¶] (c) The order or

8

decision was unreasonable. [¶] (d) The order or decision was not supported by substantial evidence. [¶] (e) If findings of fact are made, such findings of fact support the order or decision under review. [¶] Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence." (*L&S Framing, Inc. v. Occupational Safety & Health Appeals Bd.* (2023) 93 Cal.App.5th 995, 1008 (*L&S Framing*), quoting Lab. Code, § 6629.) 'The findings and conclusions of the appeals board on questions of fact are conclusive and final and are not subject to review. Such questions of fact shall include ultimate facts and the findings and conclusions of the appeals board." (Lab. Code, § 6630; see also *L&S Framing*, at p. 1008.)

" ' " 'Our function on appeal is the same as that of the trial court in ruling on the petition for the writ. We must determine whether based on the entire record the [Appeals] Board's decision is supported by substantial evidence and whether it is reasonable. [Citations.] Where the decision involves the interpretation and application of existing regulations, we must determine whether the administrative agency applied the proper legal standard. [Citation.] Since the interpretation of a regulation is a question of law, while the administrative agency's interpretation is entitled to great weight, the ultimate resolution of the legal question rests with the courts . . . . An agency's expertise with regard to a statute or regulation it is charged with enforcing entitles its interpretation of the statute or regulation to be given great weight unless it is clearly erroneous or unauthorized. [Citations.] The [Appeals] Board is one of those agencies whose expertise we must respect. [Citation.]' [Citation.] However, '[a]n administrative agency cannot alter or enlarge the legislation, and an erroneous administrative construction does not govern the court's interpretation of the statute.' " ' "

9

(*L&S Framing, supra*, 93 Cal.App.5th at pp. 1008-1009, quoting *Overaa Construction v. California Occupational Safety & Health Appeals Board* (2007) 147 Cal.App.4th 235, 244-245; see also *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310.)

Under the substantial evidence standard mentioned above, we will not disturb the Board's findings if they are reasonable, even if the evidence is susceptible of opposing inferences. (*Sully-Miller Contracting Co. v. California Occupational Safety & Health Appeals Bd.* (2006) 138 Cal.App.4th 684, 692.) "We view the evidence in a light most favorable to the Board's decision, drawing all reasonable inferences and resolving all conflicts in the evidence in favor of the decision." (*Teichert Construction v. California Occupational Safety & Health Appeals Bd.* (2006) 140 Cal.App.4th 883, 888.)

II. *Sufficiency of Evidence of Citation 1*

A. *Safety Order 3203(a)(4)*

Safety Order 3203(a)(4) provides that an employer's injury and illness prevention program "shall be in writing and, shall, at a minimum: [¶] . . . [¶] Include procedures for identifying and evaluating work place hazards including scheduled periodic inspections to identify unsafe conditions and work practices. Inspections shall be made to identify and evaluate hazards: [¶] (A) When the Program is first established; [¶] (B) Whenever new substances, processes, procedures, or equipment are introduced to the workplace that represent a new occupational safety and health hazard; and [¶] (C) Whenever the employer is made aware of a new or previously unrecognized hazard."

1. *The Board's Findings*

10

The Board found that the circumstances involved two "interrelated, but not inextricable" hazards: the pinch point between the suspended pipe brace and the horizontal pipe on the stanchion, and the suspended load itself. The Board acknowledged that NASSCO's Rigging Safety Procedure Manual directed riggers to keep clear of pinch points and its safety training also addressed the importance of avoiding such hazards. But it nevertheless found NASSCO failed to effectively identify hazards associated with pinch points. The Board found the workplace had "changed when [the employee] started to install the third pipe brace" since the horizontal pipe, and therefore the pinch point, was not present on the pipe braces that the employee had already installed, and it was therefore a "new hazard which required identification and evaluation." The Board observed there was no supervisor present at that time, and while NASSCO's safety manager testified NASSCO had concluded it would be safer to install the horizontal pipe before the pipe braces on the stanchion, he did not say whether the pinch point created by the horizontal pipe was identified and evaluated at that time. "Rather [the safety manager] testified that, in his opinion, 'the existence of that horizontal piece doesn't change the fundamental rigging process.' . . . This implies that [NASSCO] felt no additional inspection was required, and therefore no inspection was conducted, which would have identified the pinch point in question." The Board found NASSCO did not present evidence that a safety inspection occurred with regard to this particular pinch point hazard, but instead, its accident report stated the employee was not aware of the pinch point, and that appropriate supervision should have recognized and addressed that hazard.

2. *NASSCO's Contentions*

11

NASSCO contends there is no record evidence showing it failed to effectively implement its injury and illness prevention program. Specifically, NASSCO maintains (1) its injury and illness prevention program adequately addressed the hazards of pinch points; (2) the Board incorrectly characterized pinch points as a new hazard; and (3) the Board incorrectly amended the citation by applying it to suspended loads.

3. *Improper Amendment Argument*

We begin with the last claim regarding an assertedly improper amendment, which NASSCO did not raise in its petition for reconsideration. As a consequence, it is forfeited. (Lab. Code, § 6618 [reconsideration petitioner "shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration"]; accord, *Ventura Coastal, LLC v. Occupational Safety & Health Appeals Bd.* (2020) 58 Cal.App.5th 1, 27 [waiver of hearsay objection]; *Sully-Miller Contracting Co. v. California Occupational Safety & Health Appeals Bd., supra,* 138 Cal.App.4th at p. 692.) "Unless an issue is presented to the Board upon reconsideration, it is not properly before the court." (*Sully-Miller*, at p. 692, citing *Davey Tree Surgery Co. v. Occupational Safety & Health Appeals Bd.* (1985) 167 Cal.App.3d 1232, 1243.)

4. *New Hazard*

"In order to demonstrate a violation of [Safety Order] 3203 . . . (a)(4)(C), the Division must demonstrate (1) that an employer was made aware of a 'new or previously unrecognized hazard,' and (2) that the employer failed to conduct an inspection to identify and evaluate that hazard." (*In the Matter of the Appeal of Hansford Industries, Inc. dba Viking Steel* (Cal. O.S.H.A., Aug.

12

13, 2021, No. 1133550) [2021 WL 3683857, at p. *8].)[6] As to the presence of a new and unrecognized hazard, there is substantial evidence from Reyes that "new . . . equipment [was] introduced into the workplace that represent[ed] a new occupational safety and health hazard" (Safety Order 3203(a)(4)(B)) such that NASSCO was required to implement inspection procedures, but failed to do so, violating that Safety Order. As summarized above, Reyes recounted the employee's statement confirming that when he installed the first two braces, the horizontal pipe creating the pinch point was not in place, but that horizontal pipe was in place when he worked with the brace resulting in his injury. Though NASSCO had a standing hearsay objection below to Reyes's conversations with others, the Board proceedings "need not be conducted according to technical rules relating to evidence and witnesses" (Cal. Code Regs, tit.8, § 376.2) and hearsay is permitted to supplement or explain other evidence. (*Ibid.*) Further, as the Board pointed out, NASSCO's inspection report indicated that the pinch point created by the horizontal pipe should have been recognized as a hazard by supervision, from which the Board reasonably inferred no inspection of that hazard took place. Likewise, its safety gram recognized that the horizontal pipe was a new element introduced into the workspace. The evidence shows NASSCO was aware of the potential safety issue with the horizontal pipe before the accident because individuals discussed the order of its installation in relation to the braces so as to determine which was more safe.

---

6    Appeals Board's decisions after reconsideration are precedential and establish the Appeals Board's official policy. (*L&S Framing*, *supra*, 93 Cal.App.5th at p. 1007.) We granted the Board's request that we take judicial notice of 24 prior Board decisions after reconsideration. (See Evid. Code, §§ 451, subd. (a), 452, subd. (c), 459; *United Assn. Local Union 246, AFL-CIO v. Occupational Safety & Health Appeals Bd.* (2011) 199 Cal.App.4th 273, 279, fn. 5.)

NASSCO cites to Board decisions concerning differing situations involving new hazards caused by custom-made components (*Hansford Industries, Inc. dba Viking Steel*, *supra*, [2021 WL 3683857]), inclement weather (*In re the Matter of OC Communications, Inc.* (Cal. O.S.H.A., Mar. 28, 2016, No. 14-0120) Decision After Reconsideration), and a modified vehicle (*In re the Matter of HHS Construction* (Cal. O.S.H.A., Feb. 26, 2015, No. 12-0492) Decision After Reconsideration). It argues the employee here was an experienced rigger and the job he did on the day he was injured was not new. NASSCO asserts he "offered no testimony that the job changed in any way, that the beams [*sic*] were each unique, that the process he was to follow had to be altered, or that a new hazard arose with the moving of each beam." We do not confine ourselves to the employee's testimony when assessing substantial evidence to support the Board's decision but look to the whole of the record. (*L&S Framing, supra*, 93 Cal.App.5th at p. 1008.) That there is evidence from which a contrary inference may be drawn does not require that we vacate the citation. (*Brietigam v. Industrial Acc. Commission* (1951) 37 Cal.2d 849, 853; *Sully-Miller Contracting Co. v. California Occupational Safety & Health Appeals Bd.*, *supra*, 138 Cal.App.4th at p. 692.)

Having reviewed the entire record, we conclude the evidence supports the Board's finding that the pinch point created by the recently installed horizontal pipe presented a new and previously unrecognized hazard that NASSCO failed to inspect and identify. We reject NASSCO's sufficiency of the evidence challenge to this citation. The Board has held that where a citation alleges multiple instances of an employer's violation of a single safety order, including violations of Safety Orders 3203(a)(4) and 3203(a)(6), a single proven instance is sufficient to sustain the citation. (*In the Matter of the Appeal of Papich Construction Company, Inc.* (Cal. O.S.H.A., Mar. 26, 2021,

14

No. 1236440) [2021 WL 1237266, at p. *12]; *In the Matter of the Appeal of Hill Crane Service, Inc.* (Cal. O.S.H.A., Sept. 24, 2021, No. 1135350) [2021 WL 4496936, at p. *4]; *In the Matter of the Appeal of National Distribution Center, LP* (Cal. O.S.H.A., Oct. 5, 2015, No. 12-R6D2-0378) [2015 WL 6629812, at p. *8, & fn. 11].) Given our conclusions, we may uphold citation 1, but we nevertheless address the second instance of that citation.

B. *Safety Order 3203*(*a*)(*6*)

Safety Order 3203(a)(6) provides that an employer's injury and illness prevention program must "[i]nclude methods and/or procedures for correcting unsafe or unhealthy conditions, work practices and work procedures in a timely manner based on the severity of the hazard:  [¶]  (A) When observed or discovered; and, [¶]  (B) When an imminent hazard exists which cannot be immediately abated without endangering employee(s) and/or property, remove all exposed personnel from the area except those necessary to correct the existing condition.  Employees necessary to correct the hazardous condition shall be provided the necessary safeguards."  The Safety Order "requires employers to have procedures in place both to identify hazards as they arise, and to take appropriate corrective action to abate the hazards." (*In the Matter of the Appeal of BHC Fremont Hospital, Inc.* (Cal. O.S.H.A., May 30, 2014, No. 13-R1D2-0204) [2014 WL 2624406, at p. *2].)  It "is a 'performance standard,' which establishes a goal or requirement for employers to meet, while leaving the employer latitude in designing an appropriate means of compliance."  (*Id*. at p. *3.)  The employer's corrective action "must be sufficient in magnitude and scope to address the particular hazard."  (*In the Matter of the Appeal of Papich Construction Company, Inc., supra,* [2021 WL 1237266, at p. *12].)

15

1. *The Board's Findings*

The Board found NASSCO failed to correct the pinch point and suspended load hazards: "[Employee's] injury ultimately occurred because he was in physical contact with a suspended load. His hand would not otherwise have been in proximity to the pinch point. [NASSCO] argues that it corrected the hazard by implementing enhanced safety training on pinch points after [the employee] was injured. . . . To wit, [NASSCO's] Rigging Safety Gram . . . , created after and in response to [the employee's] injury, cautions employees to be 'aware' and 'watchful' of the positions of their hands and bodies in relation to equipment and suspended loads during rigging operations. Yet, it explicitly permits employees to place their hands on suspended loads. Employer therefore failed to correct the pinch point hazard, because it still allowed employees to place their hands on suspended loads, which could inadvertently bring employees in proximity to a pinch point, not to mention the myriad other hazards that suspended loads present." The Board found that because NASSCO "routinely allowed employees to be in direct contact with suspended loads, which in turn placed employees within proximity of pinch point hazards" and also had a "standard practice to allow riggers to be in physical contact with suspended loads," it failed to correct these hazards.

2. *NASSCO's Contentions*

NASSCO contends the Board mischaracterized its corrective actions, as it took affirmative action following the accident to correct the hazard of pinch points. It points out that its safety gram did not make any mention of permitting employees to use their hands to guide loads into position, and specifically warned employees about body positioning awareness and not putting their hands in a pinch point. According to NASSCO, it "instituted

written policies and enhanced training to correct the hazard of pinch points and to ensure that no other employees suffered similar injuries in the future." Thus, it was in compliance with Safety Order 3203(a)(6).

3. *The Safety Gram Was Insufficient to Correct the Hazard*

Here, while NASSCO did take steps to address the particular pinch point hazard with its rigging safety gram, that document depicted an individual with his hand on the load, so as to point out how it ultimately got caught in the pinch point. The safety gram did not instruct employees to not touch or keep clear of suspended loads, but suggested they may physically touch such a load as long as their hand placement was away from a pinch point. NASSCO's other safety policies expressly permitted riggers to guide loads with their hands. Vuong testified that the safety violation was not that the employee had his hand on the load, but that it too high on the brace and too close to the pinch point. Substantial evidence—the rigging safety gram itself—shows that NASSCO's post-accident action was not sufficient or effective to correct the hazard of employees being in direct contact with suspended loads, contrary to NASSCO's safety manual policy requiring them to keep clear of such loads. The Board reasonably found a violation of Safety Order 3203(a)(6).

III. *Sufficiency of Evidence of Citation 2: Safety Order 5042(a)(9)*

Safety Order 5042(a)(9) provides: "Whenever any sling is used, the following practices shall be enforced: [¶] . . . [¶] . . . All employees shall be kept clear of loads about to be lifted and of suspended loads. (See [Safety Order] 5002)." At the time of the citation, Safety Order 5002 provided: "Operations shall be conducted and the job controlled in a manner that will avoid exposure of employees to the hazard of overhead loads. Wherever loads must be passed directly over workers, occupied work spaces or occupied

17

passageways, safety type hooks or equivalent means of preventing the loads from becoming disengaged shall be used. [¶] NOTE: Employees should not work in the area directly beneath a suspended load." (Former Cal. Code Regs., tit. 8, § 5002.)

A. *The Board's Findings*

The Board found NASSCO failed to keep employees clear of suspended loads, and that Division had established a violation of Safety Order 5042(a)(9). In part, it reasoned that Safety Order 5042's plain language "requires employees to be 'kept clear of all loads about to be lifted and of suspended loads.' " It pointed out that Safety Order 5042(a)(9) mentioned Safety Order 5002, "which refers to 'overhead loads.' " The Board stated NASSCO urged it to disregard the phrase "loads about to be lifted and of suspended loads" and interpret the regulation to apply only to "overhead loads" but it ruled it could not rewrite the safety order so as to render a term surplusage. It stated NASSCO's "interpretation would remove protections for workers exposed to suspended loads which are not directly overhead. This interpretation directly conflicts with the longstanding rule that safety orders 'are to be given a liberal interpretation for the purpose of achieving a safe working environment.' " The Board rejected NASSCO's argument that industry practice should be the guiding factor in what are safe working conditions for rigging and hoisting operations, ruling industry standards "do not supersede regulatory requirements." It explained that an employer "may not substitute its own judgment for the mandate of safety orders."

NASSCO makes two arguments in its sufficiency of the evidence challenge to citation 2, which we address in turn.

18

B. *Due Process Argument*

NASSCO contends citation 2 is not "set forth with reasonable particularity," and thus it violates both Labor Code section 6317[7] and its due process rights. More specifically, NASSCO argues the citation's description—that the "employer did not keep all employees clear of loads about to be lifted and of suspended loads"—contains "no facts" that would apprise it as to the alleged violation. It contends the second sentence—that the "employee working under a suspended load was seriously injured . . . ."—is factually inaccurate, as the employee was not *under* the load, but level with it as he guided the pipe brace in place, and thus the citation does not afford it due process.

We do not address the argument. As the Board points out, NASSCO did not raise these issues in its reconsideration petition, and they are forfeited. (Lab. Code, § 6618.)

C. *Compliance with Current Safety Order*

NASSCO contends that citation 2 must be vacated because it is now in compliance with the current Safety Order. Rather than referring to Safety Order 5042(a)(9) cited by Division, NASSCO refers to Safety Order 5002 addressing "overhead loads." It points out that Safety Order 5002 was amended in July 2022—five months before the Board issued its decision—to reflect industry practice and make an exception for employees "guiding a

---

7    Labor Code section 6317 states in part: "Each citation [issued by the Division] shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the code, standard, rule, regulation, or order alleged to have been violated." (Lab. Code, § 6317, subd. (a).)

19

load" as the NASSCO employee was doing in the present case.[8]  NASSCO argues "[t]he Board cannot rely on an outdated version of the regulation to support its conclusion."  This latter point is asserted without legal argument or authority, allowing us to consider it forfeited.  (Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate brief must "support each point by argument and, if possible, by citation of authority"]; *640 Tenth, LP v. Newsom* (2022) 78 Cal.App.5th 840, 865, fn. 17 ["arguments made without reasoned argument and citations to authority may be treated as forfeited"].)

In any event, the Board responds that Safety Order 5002 is irrelevant, as NASSCO's citation was for a violation of Safety Order 5042(a)(9), not Safety Order 5002.  We agree.  The Board has explained:  "[Safety Order] 5042(a)(9) deals with 'suspended loads,' but refers to [Safety Order] 5002, which uses the term 'overhead loads.'  [¶]  The language of the sections is different and we presume the Standards Board intended to cover different situations by use of different terms.  [Citations.]  [¶]  Both suspended loads and overhead loads present hazards to workers.  . . .  [A] load need not be so high as to be overhead to present a risk of serious injury.  It seems

---

8    Safety Order 5002 now reads in part:  "(a) Operations shall be conducted and the job controlled in a manner that will avoid exposure of employees to the hazard of overhead loads.  Wherever loads must be passed directly over workers, occupied work spaces or occupied passageways, safety type hooks or equivalent means of preventing the loads from becoming disengaged shall be used.  [¶]  (b) While the operator is not moving a suspended load, no employee shall be within the fall zone.  [¶] EXCEPTIONS:  [¶]  (1) Employees engaged in hooking, unhooking or guiding a load."  Subdivision (c) of Safety Order 5002 now reads in part:  "(c) When employees are engaged in . . . guiding the load . . . and are within the fall zone, all of the following criteria shall be met:  [¶]  (1) The materials being hoisted shall be rigged to prevent unintentional displacement.  [¶]  (2) Hooks with self-closing latches or their equivalent shall be used.  [¶]  (3) The materials shall be rigged by a qualified rigger."  (Cal. Code. Regs., tit. 8, § 5002.)

20

appropriate, therefore, that the Standards Board would address both situations. And, it would be an absurd reading of [Safety Order] 5042(a)(9) to say that it does not apply unless loads are high enough to be over an employee's head when a load suspended inches high can present significant hazards to workers." (*In the Matter of the Appeal of: Clark Pacific Precast, LLC, Donald G. Clark Corp. & Robert E. Clark Corp. Dba Clark Pacific* (Cal. O.S.H.A., Oct, 25, 2012, No. 09-R2D1-0283) [2012 WL 6560467, at p. *3].)

Here, it is undisputed that during the incident a sling was in use suspending the brace. The evidence shows the employee, who had his hand directly on the brace to guide it, was not "kept clear . . . of [the] suspended load" as required by the cited Safety Order. Citation 2 is supported by the evidence.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


BUCHANAN, J.